The next case is 2007-138CF, Airflow Technology v. United States. Thank you very much for being here. I don't feel badly, just because the others aren't interested, we are. Thank you, but someone likes us. Yeah, we do. Thank you. May there be support. My name is Jessica Rootkin, my co-counsel is Tom O'Donnell, and we represent Airflow Technology. This is a case of statutory construction. What is the meaning of the phrase, straining cloth of a kind used in oil presses or the like. The court believe, and all parties agree, that this phrase is not defined in the tariff. Therefore, it must be defined by its common and commercial meaning, which can be ascertained by reference to lexicographic and other sources such as encyclopedias. We believe that based on these sources, the meaning of the term oil press is a machine that compressively separates solids from liquids. Why are you focusing on that? Why don't you focus on the term straining cloth? Because I would have thought, and I looked it up in the dictionary, I would have thought that a straining cloth itself suggests separating liquid from solid. That's what a strainer does. Well, that's true. But it's not an argument you can make. The reason why we focus on the entire phrase is, well, twofold. One is, of course, that the entire phrase is what we have to construe, not just straining cloth. But also because of the court's opinion in GKD, which was relied on heavily by both us and the court below. That's not why we focus on it. So why are you focusing on it? Are you biding on the oil press? We understand that, Your Honor. Nevertheless, it's the only precedent that we have that interprets this phrase, and therefore we believe it's very helpful in the situation here. Not really. Okay. The term oil press refers to a machine that basically squashes liquid-containing substances, that compressively squashes them to separate out the liquid from the oil. And the term, or the like, means same or very similar. The same or nearly the same. Therefore, we think when you put all of the words together, straining cloth of the kind used in oil presses or the like means filter medium, straining cloth, that's used in machines that separates liquids from solids. And even though Your Honor has correctly pointed out that GKD is not binding on this court, this was the same conclusion, we believe, that was reached in GKD. Let me parse this a little bit. Rather than putting it all together, I'd sort of like to divide it up a bit. The phrase, or the like, straining cloth of the kind used in oil presses or the like, do you think or the like modifies straining cloth, or do you think or the like modifies oil presses? We think that it's capable of being read either way. It is, but which is the correct way to read it? We believe the correct way to read it is that it modifies oil presses. It's straining cloth of the kind that's used in oil presses or things like oil presses. In which case, GKD really isn't on point. In this case, is it because the device used in the paint industry is not like an oil press? Well, that's correct, and I think that was the point that is supported by GKD. It's true that GKD did not consider classification of material that was used on machinery that strained particles from air instead of from liquid, but in reaching its determination of whether the filter-belted issue there is classifiable in 5911.4200, it necessarily had to determine what the meaning of the term straining cloth of the kind used in oil presses or the like meant. And we think the court clearly decided after surveying what was an oil press and what other things were like oil presses, presses used in the sugar refining industry, presses used in brewing, screw presses, roll presses, that all of these are things that separate liquids from solids. Does it always have to separate liquids from solids, or can it separate two different liquids? Like oil and water, you can separate that. I think also liquid from liquid would qualify. So it's not liquids from solids, it's solids from liquids. It could be also liquid from liquid, couldn't it? I believe so. I think the point that we're making is that it can't be liquids from air. I'm sorry, solids from air. That you have to draw a line at some point to determine what is like an oil press, or if you interpret it the other way, what is like straining cloth that is used in an oil press, and what is not. There has to be a dividing line, basically, in the universe of things that are included, and that we fall outside of this dividing line, that paint spray booths for automobile painting and airplane painting, etc., are not like oil presses, and that filter media that's used in paint spray booths is not like filter media that's used in oil presses. We have uncontroverted evidence in this case that Sparrowfield can't be used to filter liquids from solids, for two reasons. One is that the pressure that's needed to force the liquid through the Sparrowfield would rip it. Sparrowfield has very small holes, basically, pores, because it's capturing very fine particles, as opposed to filters that are used on oil presses or other liquid filtering machinery, which has much wider pores and allows the liquid to flow through. Therefore, forcing liquid through the Sparrowfield would rip it and destroy it. In addition, Sparrowfield is impregnated with a tachyfying substance, which is meant to capture very small particle matters. If you force a liquid through the Sparrowfield, it removes the tachyfying substance as it travels through. So if you had a situation where you filtered, let's say, olive oil through the Sparrowfield, the Sparrowfield would be destroyed. It would be a fully ripped mess. The government's not contending otherwise, is it? Pardon me? The government's not arguing otherwise, is it? We don't believe so. No. But we also think that this is an important point to focus on because it demonstrates that this filter media is not like filter media that's used on oil presses or machines that are similar to oil presses. But if you focus on the straining cloth instead of the type in which we point it out, would it make a difference? Would which make a difference? I'm sorry? The definition of straining cloth. Instead of focusing on the oil presses, let's focus in on the beginning of that sentence, straining cloth. Uh-huh. What is the definition of a straining cloth? If you look at GKD, the definition of a straining cloth standing alone is very broad. Try it. Okay. Straining cloth. You keep coming back asking us to parse a decision which isn't binding us. We're looking at this de novo, right? Right. So what's the dictionary say? A strain to strainings or straining. Did you ever look? No, Your Honor. I personally did not. We relied on the definition of straining cloth that was in GKD. But I believe, as you've suggested, Your Honor, that if you look in the dictionary, yes, the straining cloth is like a strainer. It's straining out solid things, solid particles from a liquid. But does it always strain out solid particles? If you have a straining cloth, it's only straining out a liquid. Even if that – assuming that that's true, Your Honor, we still don't believe that that encompasses something that filters out solids from air. That's a different animal. But it's true that everything is – that you have a broad universe of filtration. But within that universe, there are certain divisions. Heading 8421, the tariff, for example, is the provision that encompasses machinery for filtering. And there's two broad classes of machinery included in that tariff provision, machinery for filtering liquids and machinery for filtering air. We think that, rationally, the media that is included on the machinery is also a different animal, as demonstrated again by the fact that spirit-filled can't filter liquids from solids. We also believe that the court's reading below of the term straining cloth of the kind used in oil presses or the like violates the tenet of statutory construction that every word in the statute must be given meaning. We believe that the way the government and the court interprets the term straining cloth is any fabric, any filter medium used for any process of filtration. If that is in fact the case, then the words of the kind used in oil presses or the like become meaningless. What other limitation is there? There is none. There must be some meaning given to those words, and we believe that the only meaning that can be given to them is that straining cloth of the kind used in oil presses, which is machines that separate liquids from solids, or perhaps liquids from liquids, and the like. I'm going to start putting you on to your votes. Do you want to say that? Yes, I'd like to. Thank you very much. Thank you. Ms. Walsh. Ms. Walsh? Would you like to pronounce me correctly? Yes, the pronunciation is Walsh, sir. Thank you, Your Honor. May I please report? There is no dispute that the imported filters fall within the common meaning of the term straining cloth. If you take a look at the appellant's reply brief, they say as much. Yeah, but I wonder whether that's right. I mean, the fact that they did not put a wrong construction of straining cloth is implying they're not us. And doesn't the dictionary suggest that straining cloth means it's something that's used to separate solids from liquids? Actually, Your Honor, I have combed numerous dictionaries and could not uncover a definition for the term straining cloth. It's a most odd term, isn't it? That's correct, Your Honor. I have looked at numerous decisions and could find them. Correct. That's correct. I don't believe so, Your Honor. Not only can term or tariff provisions be construed based upon dictionary definitions, they can be construed based upon the understanding of the court, the court's own judicial knowledge, as well as the explanatory notes to the harmonized tariff schedule. The trial court didn't look at GKD in a vacuum. The trial court looked at that prior decision and accepted that part of it which it wanted to accept, which was reasonable in light of the construction of the statute. The trial court also looked at the explanatory notes which give you guidance as to the scope of heading 5911. And the explanatory notes expressly state that the provision for straining cloths of a kind used in oil presses or the like include both those for straining liquids as well as those for straining gases. Let's talk a little bit about that, Ms. Walser. Yes, Your Honor. Let me be honest with you. I'm having a lot of trouble coming out where Customs and CIP came out on this case because it seems to me that the law of the like naturally modifies oil presses. So it's oil presses or things like an oil press. Well, I know what an oil press is. And that's rather easy to understand. And a paint ventilator ain't nothing like an oil press. All right. But one thing you do have going for you is this explanatory note, the language of which is very odd. And I wonder if you happen to know any of the history behind it. I'm referring to the explanatory note that describes 591140, the straining cloth. Straining cloth, whether or not of a kind used in oil presses or for similar filtering purposes, e.g. in sugar refineries or breweries, fine up to that point. And then all of a sudden it jumps off the cliff and says, and for gas cleaning or similar technical applications in industrial dust collecting systems, which is a totally different kind of idea. Do you have any idea where that last clause came from and why it's even in there? The short answer to Your Honor's question is no. I have no idea where the clause came from specifically. I can only use tools of construction that I believe apply here. So not just looking at the explanatory notes themselves, but at the scope of Chapter 59 and specifically heading 5911, the provision is for straining cloths used for technical purposes. We're focusing on straining cloths. What are we supposed to do with the note? I mean, I agree with you that the note strongly supports what you're saying, okay? But what do we get out of the note? Is that an aid to construction or do we only give it a sort of Skidmore-like deference for, you know, the extent that it had power to persuade? Is it pertinent? Does it help you? Does it lead to an inference that the construction of the note is correct? What's the status of the note?  And that is, if you find it persuasive, you can use it to interpret the scope of the statutory provisions at issue here. The choice is yours. However, given the language used in the statute, I would submit on behalf of the government here that it assists the court greatly in determining the scope of this provision. Congress stated that you could use explanatory notes to determine the intended scope of the statutory provision. Here you have explanatory notes that were in existence prior to the enactment of the very statute that is at issue. These notes... I'm still confused about the status of the notes. If I read the note and I say, well, that doesn't persuade me, sort of like a Skidmore situation, is that the end of the note? Do I then forget about the note? Or am I supposed to say, well, it's not Chevron deference, but the note, I should give some sort of deference because it was done by Customs, and how to use it to interpret the statute. Is it relevant to interpretation as opposed to simply being relevant to persuasion? I would say that it's relevant to interpretation and not relevant to persuasion. However, it could be both. I feel uncomfortable responding to the court's question in part. I would love to say that in this case, not looking at the explanatory notes for any other provision in the HTS, this court should follow them and adopt them and apply them here to the classification of the merchandise at issue because they assist the court in construing the scope of this statutory provision. And they also support your argument. And they also absolutely support the government's argument here, Your Honor. Thank you. However, I want to- And they also support your argument that we only- And that's an argument- We should vote. I'd make that argument tomorrow. But the point that I'm trying to make here is that Congress, and very seriously, Congress stated that this court can use these explanatory notes to assist it in ascertaining the scope of a statutory provision. I would be willing to vote. I understand. It came from the World Customs Organization, of which the United States is a signatory. That phrase really seems to be out of character. Andrew Yaskin- Excuse me? It seems to be added in that explanatory note, for slating cloth of the chapter 59, number 7A, and for gas cleaning, period, or for similar technical applications, and industrial dust collecting systems, etc. Is that broad enough to cover what we have here? Absolutely. Or is that slating cloth, which is limited to windows? No. I would say that the explanatory note itself tells this court that heading 5911, subheading 5911.9400, includes not just oil presses, but also other straining cloths that are used in industrial applications. If you view it from a perspective of oil presses represent an industrial technical application versus the type of straining cloths that are only used in oil presses, then you understand the explanatory note as well as the scope of the provision at issue. But aren't we supposed to take each one of those sections as a meaning, because basically you find out the straining cloth of the kind used in oil presses, or the like. So we're saying that oil or like would include any matter which also strains gas. Correct. Or particles from gas. Correct. That is exactly what we're arguing here. And if I may, Your Honor, I'd like to take you through the statutory provision itself. Straining cloths. We could find no express definition for straining cloth. And like appellant airflow here, we accept the definition provided by the GKD court and also ascertain that the definition came from somewhere that was a reliable source. So if you accept that straining cloth... They looked at encyclopedias, Your Honor. And off the top of my head, I can't remember which one. But we did look at those as well. Determined that straining cloths were filter media. The term itself is broad and can include almost anything. So if you stop right there, straining cloths could include almost anything, including a gas mask made out of paper or some other form of textile that you put over your face. When you move on from there, straining cloths of a kind, additional U.S. Rule of Interpretation 1A tells this court that that signals principal use, that language. So we're looking at a category of merchandise to which straining cloths, which are actually used in oil presses, belong. If it's an actual use provision, it would have simply said straining cloths used in oil presses. And that would be the end of the matter. However, it isn't. It's a principal use provision that includes more than simply the straining cloths used in oil presses. So just using that language alone, the provision based upon additional U.S. Rule of Interpretation 1A is broader than simply those straining cloths used in oil presses. The other kind signals that... To the extent that you look at the GKE case, they pull a lot of encyclopedias to find filter cloth, but they don't cite anything for the meaning of straining cloth. The court there just assumed that straining cloth and filter cloth were the same thing. Whereas it seems to me that's sort of the issue that's before us is whether they're the same thing. So I don't see that they've cited anything which is really supportive of your position. Okay. Thank you, Your Honor. I could find no definition for straining cloth, and I searched as well. The court's definition of straining cloth is reasonable. This court doesn't have to accept GKD. We agree with the court that the court below could have analyzed the scope of this tariff provision on its own de novo. It was under no obligation to follow the GKD. However, it determined to do that because the GKD court's decision was reasonable. And quite frankly, standing alone, Customs' position here, if the court is having a problem with the construction of this tariff provision, Customs has maintained a position that has been reasonable for almost 20 years. That position has been consistent, and even if this court doesn't agree with it in totem, because it's consistent, because it's reasonable, and has been longstanding, that standing alone is precisely enough for this court to defer to the agency's position, which happens to be consistent with the lower-course decision in GKD, as well as the lower-course decision in this case. It is also consistent with the explanatory notes and consistent with the WCO opinion that is directly on point here. If this court is having trouble construing the scope of this statutory provision and is not comfortable with the GKD court's decision or the lower court's decision in this case, then absolutely 100% we maintain that Customs is entitled to deference here. The position has been consistent, longstanding, and it is reasonable, and nothing has been presented thus far either below or here that should cause this court to deviate from the agency's position, which is strong in and of itself when you look at what is available to the court for determining the scope of a statutory provision. The lower court could have relied solely upon the explanatory notes because Congress said it could. I think you make the point in the brief that the explanatory note that we have here was in the prior tariff provisions as well, right? I'm sorry? The explanatory note we're dealing with here was in the prior tariff provisions as well. I don't know that I made that point, Your Honor. Am I confused? I stated that the explanatory note existed in 1986 and formed the basis for Congress enacting this provision in 1989, so therefore Congress would have been aware of this explanatory note... Well, we're saying the same thing. To what extent... I don't know how to answer this, but when they enacted this provision in 1989 with the explanatory note being the same, to what extent was the explanatory note actually put before the congressional committee? I don't know how to answer that question because what I do know is that the ITC made a recommendation to the President. The recommendation would be to follow what the CCC stated in the explanatory notes regarding the scope of the statutory provision. The enactment of the statute would have been to the presidential proclamation and then ratified by Congress. I would submit to the Court that under that history, that the fact that the explanatory note existed  to the President and formed the basis for the President signing into effect the Harmonized Terror Schedules of the United States, then that in and of itself supports the position. One last question. Does the government agree that this particular product is covered under... 56039490 but for the problem we've been wrestling with? Do you agree with that? Absolutely agree but for the fact that if it is classifiable in heading 5911 or chapter 59, it would fall within the nominal group provision. There is no dispute that but for that. It's not like we're searching for a category to stick it in. We have a category to stick it in but for the 5911 problem. And the fact that the explanatory note to heading 5603 supports classification of this kind of merchandise in heading 5911. Thank you very much, Your Honors. I have four points, Your Honors. First off, as to the explanatory notes. As Your Honors are aware, the explanatory notes are not binding on this Court. The government seems to suggest that Congress explicitly adopted the explanatory note to 5911 at issue here. It did not. The explanatory notes were part of the entire body of explanatory notes that existed when the Harmonized Terror System was adopted by the United States. We submit that when the explanatory note differs from the clear and plain language of the statute, the explanatory note can't be allowed to contradict the meaning of the statute. The statute here says you've got to have straining cloth of a kind used in oil presses or the like. Or the like has to mean something. And we think it means the same or nearly the same. Suppose we think that it's ambiguous. Can we use the explanatory note to resolve the ambiguity? Yes. Of course you can use the explanatory note to resolve the ambiguity. However, we believe that the statutory language is clear. If the statute was clear, we wouldn't need it. Let me amend that. The meaning of the statutory language is clear by reference to that right thinking of people who think the statute is clear. Yes, Your Honor. And of course we do. Moreover, Your Honor had some questions about how that language in the Statute of the Explanatory Note came to be and we can provide some further explanation if you'd like. The government seems to suggest that simply because the product is used for technical purposes that it must be classified in Chapter 59, specifically in Heading 5911. And we believe that's incorrect. Products can only be classified in Heading 5911 if they fall within Note 7 to Chapter 59, which is a very specific, very detailed note that has very specific categories about what can fall within it. But that does speak to gas cleaning. Strain caused from gas cleaning. The explanatory note. I was talking about Note 7 to Chapter 59. Well, I'm sorry. But I could talk about either one. Well, I admit this is under Note 7A of Chapter 59, which speaks to gas cleaning. Actually, Your Honor, there's no reference in Note 7 itself to gas cleaning. Note 7 covers six enumerated categories. Textile fabrics coated with rubber, leather, other materials, bolting cloth, straining cloth, which is the provision that we're interpreting here, flat woven textiles and fabrics, textile fabrics reinforced with metal, cords, braids, and the like. Simply because something is used for a technical purpose does not automatically make it fall within 5911. Counsel also referred to principal use and actual use as we've explained at further length in our briefs. Even under a use analysis, Sparrow Filth does not fall within 5911. We have to look at the class or kind of merchandise that's included. The class or kind of merchandise that's included is that which can be used to filter liquids from solids, which Sparrow Filth cannot. The government also suggests that we should give Skidmore deference to its position. We submit that we shouldn't. Skidmore deference is only due to a position that is well-reasoned and that accords with the statute. Here, the government's position is not well-reasoned. The statutory language we submit cannot include material which is not capable of being used on machines that are like oil presses. This is incapable of use in that matter. And therefore, the government's position is not to do any deference use of that. And I think I'm almost out of time. Am I out of time? Thank you very much.